OPINION OF THE COURT
Lawrence E. Kahn, J.
Petitioner, Schenectady Chemicals, Inc., by way of a CPLR article 78 proceeding, seeks to annul, vacate, and set aside as illegal and void, a certain mining permit number 00122 which was heretofore issued by respondent.
Petitioner is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York, having its principal offices at Congress Street and Ninth Avenue in the City and County of Schenectady. Respondent *1081 Robert F. Flacke, is the duly appointed Commissioner of the State of New York, Department of Environmental Conservation. Respondent Robert H. Bathrick, is the regional supervisor of lands and forests within the State, Department of Environmental Conservation. Respondent Bonded Concrete, Inc., and Troy Sand and Gravel, Inc., are domestic corporations existing under the laws of the State of New York, and having offices for the regular transaction of business within the State of New York. On oral argument of the instant proceeding, the Town of Rotterdam, although not a party hereto, was granted permission to submit legal arguments in connection herewith.
The mining permit in question was issued by the Department of Environmental Conservation to Bonded Concrete, Inc., authorizing it to "operate a mine located in the County of Schenectady, Town of Rotterdam.” In connection therewith, judgment is sought annulling, vacating, and setting aside as illegal and void the mining permit issued on or about November 16, 1979 or suspending the mining permit, together with a further order directing that respondents notice and hold a public hearing thereon, and consider and determine the merits of the application by respondent, Bonded Concret, Inc., de nova and pending a public hearing, granting a further order restraining the stopping of any and all mining excavation and activities by respondent, Bonded Concrete, Inc. They further seek a judgment declaring the permit unconstitutional, illegal, void, and of no force or effect, together with a judgment in the sum of $100,000,000 against defendants, Robert F. Flacke and Robert H. Bathrick. Finally, they seek a judgment against defendant, Bonded Concrete, Inc., permanently restraining and enjoining them from using, directly or indirectly, said permit to carry out any type of excavation whatsoever in the area of the Rotterdam Junction Aquifer, located within the "aquifer area overlay zone”.
Insofar as petitioner seeks money damages against the State respondent, its claim shall be dismissed as a matter of law. State officers and employees are immune from liability for the performance of quasi-judicial actions involving the exercise of discretion, even, if it may ultimately be proved that such actions were wrongful or illegal in manner. (Burgundy Basin Inn v State of New York, 47 AD2d 692.) "The State’s waiver of immunity and assumption of liability has never extended to redress individual wrongs which may have *1082 resulted from an error in the exercise of judgment by an officer of the State in the performance of his duty.” (Gross v State of New York, 33 AD2d 868, 869.) It is clear, as a matter of law, that respondents were performing a quasi-judicial function when issuing the mining permit in question. Accordingly, the claim for money damages shall be dismissed.
Schenectady Chemicals, Inc., also asserts that they were deprived of due process and equal protection in that no public hearing was held concerning the application for the mining permit. ECL 70-0119 confers broad discretion upon the department in this regard. It requires it to base its determination on whether or not to hold a public hearing upon whether, in its opinion, "substantive and significant” issues have been raised about a pending permit application which may require either its denial or only limited approval. Upon a review of the record, it is this court’s opinion that the department’s decision not to hold such a public hearing constituted a reasonable exercise of discretion conferred upon it by said section of the Environmental Conservation Law. It is hornbook law that "in an Article 78 proceeding the court may not substitute its own judgment for that of the [administrative agency] and may inquire only as to whether the record shows facts which leave no possible scope for the reasonable exercise of discretion” (Matter of Tomanio v Board of Regents of Univ. of State of N. Y., 43 AD2d 643, 644). An alternative procedure was established whereby personnel from the department "met personally with everyone and anyone expressing an interest in the application.” Meetings were had not only with officials of the Town of Rotterdam, but with the New York State Department of Health, and the Schenectady County Environmental Advisory Council, as well as representatives of Schenectady Chemicals, Inc. No named parties’ property rights were involved, or could adversely be affected by the quasi-judicial determination herein, and accordingly, no public hearing was mandated by ECL 70-0119. For the foregoing reasons, it cannot be stated by this court, as a matter of law, that the Department of Environmental Conservation was guilty of anything that could be termed arbitrary and capricious in its determination not to hold public hearings on the permit application.
Plaintiff-petitioner’s third cause of action seeks to permanently restrain defendant, Bonded Concrete, Inc., from using, directly or indirectly, said mining permit to carry out any type of excavation whatsoever in the area in question. This *1083 cause of action shall be dismissed upon the grounds that there is another action pending between the parties hereto seeking precisely the same relief requested herein.
Finally, it is argued that the Department of Environmental Conservation has admitted that it issued a negative declaration and notice of determination of no significance, without having sufficient geological or limnological data and analysis upon the effect of the permittee’s excavation of gravel in the area of the aquifer. However, said respondents further assert that after the issuance of said negative declaration on July 23, 1979 and before issuance of the challenged mining permit, an extensive investigation and analysis of such data was in fact conducted by senior engineer geologist, Frederick Earl Van Alstyne, at the direction of the department and after numerous conferences and meetings with the parties involved in this litigation. Mr. Van Alstyne’s affidavit in relation thereto is appended to the answer of said respondents and made a part thereof. It sets forth in detail, his credentials and qualifications to determine the issues presented, including the sources of his investigation, a review of the affidavits of Dr. Philip Hewitt, Dr. Carl George, and Dr. Vincent Schaeffer, which were submitted on behalf of Schenectady Chemicals, Inc., as well as the information supplied by Bonded Concrete, in order to determine the possible impact of the mining upon ground water production and quality. In this 13-page document, Mr. Van Alstyne undertakes a point by point analysis of the allegations and concerns raised by the petitioner-plaintiff herein, and concludes that "The proposed mining operation would not adversely affect ground water quantity or quality in the Rotterdam Aquifer.”
It is argued that, in the absence of an environmental impact statement (EIS) when one is required, the result will be the issuance of an injunction invalidating a permit or approval issued without such EIS (H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222). The Environmental Conservation Law requires that "All agencies * * * shall prepare, or cause to be prepared * * * an environmental impact statement on any action they * * * approve which may have a significant effect on the environment.” (ECL 8-0109, subd 2.) In determining whether the activity of Bonded Concrete "may have a significant effect on the environment”, the Department of Environmental Conservation was required to consider certain criteria. They assert that, while this consideration was lacking *1084 prior to the issuance of the negative declaration, upon a realization of their omission, they undertook the required analysis with an opportunity for all parties to present any factors which they deemed significant, in an effort to determine whether the proposed action might in fact, have any significant effect on the environment. After completing this thorough review and analysis, they concluded that the proposed mining permit would not have any adverse effect upon ground water quantity or quality in the Rotterdam Aquifer. Thus, they refused to rescind the previously issued negative declaration and determined that because there would be no significant effect on the environment, the provisions that require preparation of an environmental impact statement on such projects were not applicable. Likewise, they dispute the argument that they violated the rule which provides that "no agency involved in an action shall * * * approve the action until it has complied with the provisions of (SEQR [ECL art 8], 6 NYCRR, § 617.3 [a])” in that, having reviewed their initial negative declaration, and having determined, based upon meetings, scientific data and analysis, that it was correct, the SEQR provisions requiring preparation of a draft environmental impact statement, public hearings, etc., were not mandated.
Therefore, it cannot be said, that the Department of Environmental Conservation has failed to perform a duty enjoined upon it by law (CPLR 7803, subd 1). Nor, has it proceeded in excess of its jurisdiction.
In determining whether the issuance of the mining permit to respondent, Bonded Concrete, was arbitrary and capricious and an abuse of discretion, said administrative determination is subject to judicial review pursuant to CPLR 7803 (subd 3). However, this court may not substitute its judgment for that of the Department of Environmental Conservation unless the decision under review is patently arbitrary and unreasonable, and constitutes an abuse of discretion (Matter of Diocese of Rochester v Planning Bd. of Town of Brighton, 1 NY2d 508). This standard has been interpreted to mean a willful and unreasoning action without consideration of or in disregard of the facts (Matter of Elwood Investors Co. v Behme, 79 Misc 2d 910), or a determination without a factual basis (Matter of Hyland Brooks Apts. v White, 40 AD2d 178). A review of the papers submitted in opposition hereto by respondent Department of Environmental Conservation leads inexorably to the *1085 conclusion that plaintiff-petitioner has not met its burden of establishing that said respondents’ action was arbitrary and capricious. Although the initial issuance of the negative declaration was admittedly done without consideration of the requisite facts, and without a factual basis on the record, this action was thereafter reviewed by the department, and the required analysis undertaken, thus curing the initial defect.
The rationale in H.O.M.E.S. (65 AD2d 222, supra) is most applicable to the case at bar. Therein, it was admitted that a required environmental impact statement had not been performed. Even so, the Appellate Division allowed respondents four months to prepare the necessary permit, refusing to vacate respondents’ action in its original issuance thereof, pending consideration of the underlying required environmental impact study which had not been completed. In the case at bar, while it was admitted that the issuance of the negative declaration was not based upon factual scientific data, thereafter and prior to the issuance of the permit, said analysis was undertaken with a substantiated finding that an environmental impact statement was not required. Under the rationale enunciated in H.O.M.E.S., this court finds that the analysis undertaken by Mr. Van Alstyne has cured the originally defective issuance of the negative declaration, and absent any showing that said determination of no significant environmental impact was either arbitrary, capricious, or an abuse of discretion, this court will not vacate same.
Accordingly, for the reasons hereinbefore set forth, the petition shall be dismissed.